To State Highway Z

Mingo Game
Refuge

N

SW¼ NE¼ | SE¼ NE¼

SEC 18 T27N R8W

**STATE of Missouri, Respondent,**

v.

**Dennis DEWEESE, Appellant.**

**No. 52944.**

Missouri Court of Appeals,
Eastern District,
Division Five.

May 10, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 8, 1988.

Charles M. Shaw, Clayton, for appellant.

William L. Webster, Atty. Gen., Karen A. King, Asst. Atty. Gen., Jefferson City, for respondent.

CARL R. GAERTNER, Judge.

Defendant challenges his conviction for involuntary manslaughter. We affirm the conviction.

For approximately a month prior to the homicide in question, defendant's wife associated with a male basketball player with whom she attended college. Defendant suspected that the two were having an affair. On November 22, 1985, the wife and the basketball player, Kip Spears, arrived at the family home for the alleged purpose of having a discussion with defendant. The discussion escalated into an argument and defendant requested that Spears leave the home. Spears refused to leave. Defendant then went into his bedroom, retrieved a rifle, and returned to the kitchen where his wife and Spears had remained. Defendant only intended to use the rifle as a threat to get Spears to leave. Nevertheless, he deliberately put a live round into the firing chamber before returning to the kitchen. Wife testified at trial that Spears backed away from defendant, with his hands in his rear pockets, but defendant followed Spears around a corner and shot him. Defendant testified that Spears advanced toward him with one fist clenched and one hand behind his back. Defendant claims he shot Spears in self defense because he was afraid of the six and a half foot tall man. Evidence indicated that the muzzle of the rifle was approximately one to three feet away from Spears' chest when defendant pulled the trigger.

Defendant was charged with second degree murder. At the close of all evidence, the jury was instructed on murder second

degree, voluntary manslaughter and involuntary manslaughter. The jury returned a verdict of involuntary manslaughter with a recommended sentence of five years imprisonment.

Defendant appeals, claiming that the trial court erred in: (1) submitting an involuntary manslaughter instruction; (2) submitting an erroneous burden of proof instruction; (3) allowing defendant's wife to testify; (4) failing to declare a mistrial based on improper testimony and allowing irrelevant testimony; (5) admitting defendant's written confession because the confession was not voluntary.

## I

■ Defendant's first contention on appeal is that it was prejudicial error for the trial court to submit an instruction on involuntary manslaughter because that offense, involving the element of recklessness, is not a lesser included offense of second degree murder. Defendant acknowledges that under § 565.025(2)(2)(b), RSMo 1986 involuntary manslaughter is specifically denominated as a lesser offense of second degree murder, but, he argues, this section was enacted by the legislature "inadvertently or ignorantly", because recklessness is an element not contained in the legislative definition of second degree murder, § 565.021, RSMo. 1986. For this reason, he challenges the constitutionality of § 565.025(2)(2)(b), arguing that it permits a defendant to be convicted of an uncharged offense in violation of the sixth amendment to the United States Constitution and Article 1, § 17 of the Missouri Constitution.[1] Defendant's argument ignores the provisions of § 556.046, RSMo 1986:

1. A defendant may be convicted of an offense included in an offense charged in the indictment or information. An offense is so included when ...

(2) It is specifically denominated by statute as a lesser degree of the offense charged ...

Defendant further overlooks § 562.021(3), RSMo 1986 which provides "[w]hen recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." This provision of the statute was enacted for the very purpose of avoiding the argument here asserted "that something was not done recklessly because it was done knowingly or purposely." Section 562.021 V.A. M.S., Comment to 1973 Proposed Code.

The criminal code adequately advises those indicted for second degree murder that they may be convicted of the lesser included offense of involuntary manslaughter by recklessness. Defendant's contention is without merit.

## II

■ Defendant next alleges that the court erred in submitting two instructions which defined reasonable doubt as "proof that leaves you firmly convinced of the defendant's guilt." He claims that this explanation of the term unconstitutionally lowered the burden of proof. The Missouri Supreme Court recently upheld the language of these instructions, MAI–CR 3d 300.02 and 302.04, against an identical constitutional attack. *State v. Antwine*, 743 S.W.2d 51, 62–3 (Mo.banc 1987). Point denied.

## III

■ Defendant's third point relates to his wife's testimony. He argues that the court erred in permitting her to testify as a state's witness and further that the court erred in limiting cross-examination. The transcript clearly demonstrates this contention is without merit.

Section 546.260(1), RSMo 1986 provides that the accused's spouse is a competent witness but shall not be required to testify. The spouse is given the option whether or not to testify, and if he or she does testify, the spouse is subject to cross-examination on any matter referred to on direct exami-

---

**1.** This challenge to the constitutionality of the statute was not made during the trial or in defendant's motion for a new trial, but is first asserted on appeal. Defendant has therefore failed to preserve any constitutional argument and we are not required to transfer this appeal to the Missouri Supreme Court. *State v. Hyde*, 682 S.W.2d 103, 105–06 (Mo.App.1984).

nation and to contradiction and impeachment as any other witness.

The trial court questioned defendant's wife prior to her testimony. The court advised her of her option to testify against her husband, and that, if she did testify, she would be subject to cross-examination. She unequivocally stated that she wanted to testify. When asked if she would be willing to answer questions which might be asked of her by defendant's attorney concerning matters not raised on direct examination, she stated she was willing "to answer questions that relate to that date," but she did not want to go beyond what was brought up on direct examination. On the basis of these responses, the trial court ruled that cross-examination would be limited to the scope of direct examination, and to matters of contradiction or impeachment. The court advised counsel that he would rule separately on any objection alleging that a cross-examination question was outside the scope of direct.

We are somewhat at a loss in attempting to decipher the basis of defendant's complaint. His suggestion that the witness was "pressured" into testifying against her husband is totally lacking in evidentiary support. His contention that she was confused relates to the court's questions concerning her option to testify as a witness for the prosecution and also to be called as a witness by her husband regarding matters not raised by the prosecution. Once the question was clarified, she was positive and unequivocal about responding only to questions about what occurred on the day of the shooting.

■ In arguing that the court unduly limited his cross examination by restricting it to matters raised on direct examination and to impeachment, defendant refers us to three pages in the transcript where the court sustained the prosecutor's objections. In order to demonstrate the total irrelevance of these instances to the point asserted on appeal, we set them forth verbatim.

Q. (By Mr. Shaw) Well, that's terrible if your husband would go with you everywhere you went—

MR. UPCHURCH: Objection. Argumentative.

THE COURT: Yes. Sustained. Not necessary.

\* \* \* \* \* \*

Q. He had been deer hunting, which is a reprehensible thing, isn't it?

MR. UPCHURCH: Objection, Your Honor.

Q. (By Mr. Shaw) And you're in bed with somebody else while he's out deer—

MR. UPCHURCH: Objection, Your Honor.

THE COURT: Yes. Objection sustained. The unnecessary comment shouldn't be made, Mr. Shaw. Ask your questions.

\* \* \* \* \* \*

Q. And you don't have to get hit in your own house, do you?

MR. UPCHURCH: Objection, Your Honor. Asking her to speculate as to what the law is.

THE COURT: Yes. Sustained.

Obviously, none of these objections are grounded upon the court's preliminary order, which, pursuant to the statute, limited cross examination to matters referred to on direct examination. Thorough review of the transcript reveals no objection based on that ground during any of the wife's testimony. Defense counsel was permitted without restraint to thoroughly cross examine her regarding prior statements and to develop discrepancies between those statements and her trial testimony. We find no error in the trial court's ruling, nor does defendant demonstrate any prejudice. Point denied.

IV

Defendant next alleges error concerning the testimony of witness Nancy Douglas. Ms. Douglas, a babysitter who frequently looked after the couple's child, described defendant on the morning prior to the murder as "upset" and appearing to be "emotionally disturbed." These observations were objected to and the objections were sustained. Her testimony developed that prior to the killing defendant suspected his

wife was sleeping with Kip Spears. Defendant objected to the testimony on the grounds that it was irrelevant and immaterial but the state identified the testimony as establishing motive. When the court denied this objection, defendant moved for a mistrial. On appeal, defendant claims that the court erred in denying the mistrial and in allowing evidence that was irrelevant and prejudicial in disproportion to its value.

■■■ The trial court has broad discretion to determine relevancy of evidence and an appellate court will not reverse such a decision absent a clear showing of abuse of that discretion. *State v. Brown*, 718 S.W. 2d 493–94 (Mo. banc 1986); *State v. Driscoll*, 711 S.W.2d 512, 516 (Mo. banc), cert. denied ── U.S. ──, 107 S.Ct. 329, 93 L.Ed.2d 301 (1986). The evidence in question was relevant since it went to show motive. Motive can be relevant in a criminal prosecution even if it is not an element of the crime charged. *State v. Crabtree*, 625 S.W.2d 670, 675–76 (Mo.App.1981); see *State v. Washington*, 707 S.W.2d 463, 469 (Mo.App.1986). In addition, motive tends to discredit a claim of self-defense, an issue in this trial. *State v. Newbold*, 731 S.W.2d 373, 382 (Mo.App.1987); *State v. Crabtree*, 625 S.W.2d at 676. Because the trial court is in the best position to determine if the probative value of evidence outweighs its potential for prejudice, we also give the trial court broad discretion in these decisions. *State v. Kenley*, 693 S.W.2d 79, 81 (Mo. banc 1985), cert. denied 475 U.S. 1098, 106 S.Ct. 1500, 89 L.Ed.2d 900 (1986); *State v. Simpson*, 718 S.W.2d 143, 147 (Mo.App.1986).

Again based on its unique position, the trial court has broad discretion in determining whether or not the drastic remedy of a mistrial should be granted after objectionable evidence is injected into the trial. *State v. Johnson*, 700 S.W.2d 815, 819 (Mo. banc 1985), cert. denied 476 U.S. 1119, 106 S.Ct. 1980, 90 L.Ed.2d 663 (1986); *State v. Anderson*, 698 S.W.2d 849, 852 (Mo. banc 1985). We will not reverse absent an impermissible abuse of that discretion. *State v. Morris*, 639 S.W.2d 589 (Mo. banc 1982);

cert. denied 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *State v. Miller*, 680 S.W.2d 253, 255 (Mo.App.1984). We find no such abuse here. Defendant's fourth point is denied.

V

Defendant's final point on appeal alleges that the trial court erred in admitting defendant's written confession and waiver form into evidence. Defendant claims that, due to his mental state, the confession was not made voluntarily. The confession was written shortly after the shooting, when defendant turned himself over to a police officer and was taken to the police station. Prior to making the statement, defendant was advised of his rights. Defendant did not request an attorney. At the pre-trial motion hearing, the officer testified that defendant was "nervous and shaken."

■■■ Admission of a confession is a matter of discretion and will not be lightly disturbed. *State v. Davis*, 686 S.W.2d 503, 506 (Mo.App.1985) (citing *State v. Flowers*, 592 S.W.2d 167, 170 (Mo. banc 1979)). Pointing to the police officer's testimony that defendant was "nervous and shaken" at the time he wrote out his statement, defendant argues that it was not voluntary and should not have been admitted. We have no doubt that most persons when arrested for murder tend to be a bit nervous. That fact standing alone, however, fails to demonstrate that a confession was not a product of the defendant's free will. Defendant does not contend that he was subjected to any form of coercion, nor that he suffered from any mental infirmity or inability to comprehend what he was doing. Moreover, there was no material discrepancy between his written statement and his trial testimony. He suffered no prejudice by reason of its admission. "If the context of defendant's testimony at trial does not vary materially from the out-of-court statement he seeks to suppress, any error in admitting the out-of-court statement is cured by defendant's in-court confirmation

of the statement's truth." *State v. Tettamble,* 720 S.W.2d 741, 743 (Mo.App.1986).

The judgment is affirmed.

SMITH, J., and SIMEONE, Senior Judge, concur.