STATE of Missouri, Respondent,

v.

Shawn NUNLEY, Appellant.

No. ED 96113.

Missouri Court of Appeals, Eastern District, Division Four.

Nov. 29, 2011.

Rosalynn Koch, Assistant Public Defender, Columbia, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Presiding Judge.

### Introduction

Shawn Nunley (Defendant) appeals the judgment of conviction entered by the Circuit Court of St. Louis County after a jury found him guilty of second-degree assault and armed criminal action. Defendant claims the trial court erred in: (1) overruling his motion for judgment of acquittal because the evidence was insufficient for a finding that he acted recklessly when he shot the victim; and (2) failing to intervene *sua sponte* and admonish the prosecutor during his cross-examination of Defendant. We affirm.

### Factual and Procedural Background

Defendant and Ricky Boykin (Victim) were family friends who had known each other for over twenty years. In the early morning hours of July 8, 2009, after finishing his shift as a club bouncer, Victim went to the home of Defendant's sister, Rakiesha Jordan, to buy drugs and socialize. Ms. Jordan's boyfriend, Terrance Thomas, was Victim's friend and heroin supplier. At the house were Mr. Thomas, Defendant, Defendant's brother, Roderick Jordan, and two other men.

Victim had been sitting on a couch for about ten minutes, using drugs and socializing, when Defendant emerged from the back of the house and struck Victim on the back of his head with a pool cue. Victim rose from the couch and confronted Defendant. Defendant accused Victim of spreading rumors that Defendant had AIDS. As the argument escalated, Defendant asked, Victim, "What, you think I'm going to pop you in your big ass?" Defendant then removed a gun from his pants' pocket and shot Victim in the neck.

Victim fell to the floor, and Defendant stood over him saying, "I should have going [sic] kill your ass because I know you're going to snitch." After "scrambling around picking things up," the men moved Victim away from the door and left. Victim managed to use his cell phone to call the police. An ambulance transported Victim to the hospital, where he remained for three months. As a result of the gunshot wound, Victim was paralyzed from the chest down.

The State charged Defendant as a persistent offender with first-degree assault and armed criminal action. The trial court held a jury trial on November 15 and 16, 2010. At the trial, the State presented as witnesses Victim, the police officer who investigated the incident, and the trauma surgeon who operated on Victim on July 8, 2009. Defendant's brother, Roderick Jordan, and Defendant testified for the defense.

Mr. Jordan testified that in the early morning of July 8, 2009, he, Defendant, Victim, and a couple other men were sharing a plate of heroin and cocaine. According to Mr. Jordan, Defendant did not pass the plate of drugs to Victim because Victim had not contributed any drugs. As a result, Defendant and Victim began arguing. During the argument, a gun fell from Victim's waist band, landing on the couch. Mr. Jordan stated that Defendant "grabbed the gun" and "tried to defend his [sic] self." On cross-examination, Mr. Jordan testified that Defendant and Victim were "tustling [sic] and the gun went off. . . ." Mr. Jordan denied seeing Defendant hit Victim with a pool cue or threaten to kill him.

Defendant testified on his own behalf. Like Mr. Jordan, Defendant stated that, after he refused to pass the plate of drugs to Victim, he and Victim began arguing. Defendant claimed that he picked up a pool cue and used it to hit Victim on the shoulder because he "was scared." Defendant said he noticed a gun on the couch and grabbed it. Defendant testified, "[W]e got into another tussle and the gun went off." On cross-examination, Defendant admitted shooting Victim, but said, "I didn't fire a weapon at him. The weapon went off in the midst of after."

The trial court instructed the jury on first-degree assault, the lesser-included offense of second-degree assault, and armed criminal action. The jury found Defendant guilty of second-degree assault and armed criminal action. The trial court sentenced Defendant as a prior offender to concurrent terms of fifteen and twenty-five years' imprisonment. Defendant appeals.

## Discussion

■ In his first point on appeal, Defendant claims the trial court erred in overruling his motion for judgment on acquittal because there was insufficient evidence from which the jury could have found that Defendant acted recklessly. Defendant contends that the evidence introduced at trial supported a finding that Defendant's act of shooting Victim was either intentional, accidental, or justified as self-defense, but not reckless.

■ Our review of this issue is limited to a determination of whether there is sufficient evidence from which a reasonable juror could find Defendant guilty of second-degree assault beyond a reasonable doubt. *State v. Whalen*, 49 S.W.3d 181, 184 (Mo. banc 2001). "In so doing, the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Freeman*, 269 S.W.3d 422, 425 (Mo. banc 2008). We do not reweigh the evidence as "the fact-finder may believe all, some, or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case." *Id.* (quotation omitted).

To convict Defendant of second-degree assault, the jury had to find that Defendant "recklessly caused serious physical injury to [Victim] by shooting him." Mo. Rev.Stat. § 565.060.1(3).[1] The trial court instructed the jury that a person acts recklessly when "he consciously disregards a substantial and unjustifiable risk that his conduct will result in serious physical injury and such disregard constitutes a gross deviation from the standard of care which

a reasonable person would exercise in the situation." *See* Mo.Rev.Stat. § 562.021.4.

■ There was evidence at trial that, during an escalating verbal confrontation with Victim, Defendant noticed a gun laying on a nearby couch, picked up the gun, pointed it at Victim, and fired the gun. Defendant's brother, Mr. Jordan, testified that Defendant grabbed the gun to defend himself and, while they were "tussling," the gun "went off." Defendant similarly stated, "[W]e got into another tussle and the gun went off." Defendant admitted shooting Victim, but denied doing so intentionally. "An accidental shooting, where the irresponsible use of a gun is shown, can support a finding of recklessness." *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005). Based on the above evidence, the jury could have determined that, by handling a loaded gun during a tussle and pointing it at Victim, Defendant was acting recklessly, in that his actions grossly deviated from the standard of care a reasonable person would use under similar circumstances.

Furthermore, Defendant's point on appeal ignores two Missouri statutes which foreclose his argument that the jury erred in finding him guilty of second-degree assault where the evidence supported a finding of first-degree assault. First, Section 562.021 provides, in pertinent part: "When recklessness suffices to establish a culpable mental state, it is also established if a person acts purposely or knowingly." Mo. Rev.Stat. § 562.021.4. "This provision of the statute was enacted for the very purpose of avoiding the argument here asserted that something was not done recklessly because it was done knowingly or purposely." *State v. Deweese*, 751 S.W.2d 389, 391 (Mo.App. E.D.1988) (internal quotation

1. All statutory references are to Missouri Revised Statutes (2000), unless otherwise indicated.

omitted). Victim testified that Defendant accused Victim of spreading rumors about him, hit Victim on the head with a pool cue, withdrew a gun from his pocket and pointed it at Victim, threatened to shoot Victim, shot Victim in the neck, and then opined that he should kill Victim to prevent him from "snitching." This evidence that Defendant knowingly and purposely shot Victim supports the jury's finding that Defendant recklessly caused serious physical injury to Victim.

Additionally, Section 545.030.1 provides, in part, that no criminal "trial, judgment or other proceeding be ... in any manner affected ... [b]ecause the evidence shows or tends to show [the defendant] to be guilty of a higher degree of the offense than that of which he is convicted." Mo. Rev.Stat. § 545.030.1(17). Confronted with an argument similar to Defendant's, the Missouri Supreme Court explained: "There would be a strange twist in the criminal law if a defendant who had the benefit of the jury's mercy could then use the resultant conviction as a basis for avoiding conviction on the higher offense charged, on the less serious offense of which he was convicted, and possibly, of any offense whatsoever." *State v. Leisure,* 796 S.W.2d 875, 879 (Mo. banc 1990) (quotation omitted). Point denied.

■ In his second point on appeal, Defendant claims the trial court plainly erred in failing to intervene *sua sponte* in the prosecutor's allegedly improper cross-examination of Defendant. Specifically, Defendant maintains that the cross-examination was improper because the prosecutor "reiterated [Victim's] testimony with a question mark on the end" and the cross-examination was "argumentative and cal-

culated not to elicit information, but to restate the [S]tate's case and argue with [Defendant] before the jury...."

■ Defendant concedes that he did not preserve this claim of error on appeal and requests plain error review. Rule 30.20 provides, in pertinent part, that "plain errors affecting substantial rights may be considered in the discretion of the court when the court finds that manifest injustice or miscarriage of justice has resulted." Rule 30.20. Plain error review involves a two-step analysis. *State v. Baumruk,* 280 S.W.3d 600, 607 (Mo. banc 2009). First, we determine whether the claim of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *Id.* If such error is found, we consider whether the claimed error resulted in a manifest injustice or miscarriage of justice. *Id.* at 607–08.

■ Initially, we note that "a trial judge should act *sua sponte* in the trial of a case only in exceptional circumstances." *State v. Jennings,* 322 S.W.3d 598, 602 (Mo.App. S.D.2010) (quotation omitted). "Uninvited interference by the trial judge in trial proceedings is generally discouraged, as it risks injecting the judge into the role of a participant and invites trial error." *Id.*

Defendant failed to demonstrate that the trial court committed evident, obvious, and clear error in failing to intervene *sua sponte* and admonish the prosecutor during his cross-examination of Defendant. Defendant cites no support for his argument that a prosecutor may not, on cross-examination, repeat the facts asserted in another witness's testimony.[2] Indeed, the

**2.** Rather, Defendant relies on *State v. Primers,* 971 S.W.2d 922 (Mo.App. W.D.1998), which is inapposite. In *Primers,* the court held that the defendant suffered a manifest injustice when the prosecutor rebutted the defendant's testimony with evidence of the defendant's uncharged misconduct. *Id.* at 931. In the instant case, Defendant does not claim that

Missouri Supreme Court has held that, in a prosecution for assault, it is not error for the prosecutor to frame questions based on the testimony of a witness and then ask the defendant what his version was on the same point. *State v. Garner*, 360 Mo. 50, 226 S.W.2d 604, 609 (1950). This is because "it is proper for an attorney, through cross-examination, to pit the testimony of the State's witnesses against that of the defendant by way of relative comparison, as to which one was telling the truth." *State v. Savory*, 893 S.W.2d 408, 410 (Mo. App. W.D.1995) (quoting *Garner*, 226 S.W.2d at 609). We also reject the Defendant's claim that the prosecutor's questions implied personal knowledge of the facts, as the questions were clearly based upon Victim's testimony and not the prosecutor's personal knowledge. Point denied.

### Conclusion

The judgment of conviction is affirmed.

SHERRI B. SULLIVAN, and ROBERT M. CLAYTON III, JJ., concur.

the prosecutor impeached him with evidence of collateral matters.